Gregory A. Clarick
Lisa G. Horwitz
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY  10036
Telephone: (212) 790-4500
Facsimile: (212) 790-4545

Donn Zaretsky
JOHN SILBERMAN ASSOCIATES PC
145 East 57th Street
New York, New York 10022
Telephone: (212) 319-3737
Facsimile: (212) 319-8188

*Attorneys for Defendant and Counterclaim/Third-Party Plaintiff James Turrell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL HUE-WILLIAMS LTD. d/b/a ALBION GALLERY,<br><br>   Plaintiff/Counterclaim Defendant,<br><br>    v.<br><br>JAMES TURRELL,<br><br>   Defendant/Counterclaim Plaintiff.<br><br>JAMES TURRELL,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>MICHAEL HUE-WILLIAMS,<br><br>    Third-Party Defendant. | Civil Action No.:  07 Civ. 7366 (LAP)<br><br>**ANSWER, COUNTERCLAIMS AND THIRD-PARTY CLAIMS**<br><br>**Jury Trial Demanded** |

Defendant James Turrell ("Turrell") by his attorneys Manatt, Phelps & Phillips, LLP and John Silberman Associates PC, for his Answer to the Complaint of Michael Hue-Williams Ltd. d/b/a Albion Gallery ("Albion"), responds as follows:

## THE PARTIES

1.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained paragraph 1.

2.      Admits the allegations contained in paragraph 2.

## VENUE AND JURISDICTION

3.      Paragraph 3 contains allegations of law not fact to which no response is required.

4.      Paragraph 4 contains allegations of law not fact to which no response is required.

## NATURE OF THE CLAIMS

5.      Denies the allegations contained in paragraph 5, except admits that Michael Hue-Williams ("Hue-Williams") served as a dealer for Turrell for a number of years and, in that capacity, sold directly and/or indirectly through his corporate entities numerous Turrell works for a total sum of millions of dollars.

6.      Denies the allegations contained in paragraph 6, except admits that on certain occasions Turrell and Hue-Williams agreed to share and in fact shared the proceeds of the sale of Turrell works by Hue-Williams on a 50/50 split of the retail price of such works, exclusive of production costs.

7.      Denies the allegations contained in paragraph 7, except admits that on or about March 5, 2007, Turrell wrote to Hue-Williams and informed Hue-Williams that "any authority Mr. Hue-Williams or his gallery may have had to represent Mr. Turrell has been terminated," and refers the Court to such correspondence for its content.

8. Denies the allegations contained in paragraph 8.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

9. Repeats and realleges the responses set forth in paragraphs 1 through 8 as if fully stated herein.

10. Denies the allegations contained in paragraph 10, except admits that in or about 2004 Turrell embarked upon a series of works entitled the "Tall Glass" works with contribution from galleries other than Albion.

11. Admits the allegations contained in paragraph 11.

12. Denies the allegations contained in paragraph 12.

13. Denies the allegations contained in paragraph 13.

14. Denies the allegations contained in paragraph 14.

15. Denies the allegations contained in paragraph 15, except admits that Turrell produced and delivered a Tall Glass work to Louise MacBain and denies knowledge or information sufficient to form a belief as to the truth of the second sentence of the paragraph.

16. Admits the allegations contained in paragraph 16.

17. Denies the allegations contained in paragraph 17.

18. Denies the allegations contained in paragraph 18.

19. Denies the allegations contained in paragraph 19.

20. Denies the allegations contained in paragraph 20.

21. Denies the allegations contained in paragraph 21.

22. Denies the allegations contained in paragraph 22.

23. Denies the allegations contained in paragraph 23.

24. Denies the allegations contained in paragraph 24.

25. Denies the allegations contained in paragraph 25.

26. Denies the allegations contained in paragraph 26.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.

28. Denies the allegations contained in paragraph 28.

29. Denies the allegations contained in paragraph 29.

30. Denies the allegations contained in paragraph 30.

31. Denies the allegations contained in paragraph 31.

## SECOND CAUSE OF ACTION
### (Specific Performance)

32. Repeats and realleges the responses set forth in paragraphs 1 through 31 as if fully stated herein.

33. Admits the allegations contained in paragraph 33, except, to the extent such allegations contain conclusions of law, they require no response.

34. Denies the allegations contained in paragraph 34.

35. Denies the allegations contained in paragraph 35, except, to the extent such allegations contain conclusions of law, they require no response.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

36. Repeats and realleges the responses set forth in paragraphs 1 through 35 as if fully stated herein.

37. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38. Denies the allegations contained in paragraph 38, except admits that, on occasion, Turrell and Hue-Williams agreed that payment for certain Turrell works sold by Hue-Williams would be made directly to Turrell.

39. Denies the allegations contained in paragraph 39.

40. Denies the allegations contained in paragraph 40.

41. Denies the allegations contained in paragraph 41.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Statute of Frauds bars the claims made in the Complaint.

## THIRD AFFIRMATIVE DEFENSE

Albion breached its contractual and other obligations to Turrell, excusing Turrell of any contractual or other obligations to Albion.

## FOURTH AFFIRMATIVE DEFENSE

Injunctive relief is not a proper remedy under the theories asserted by Albion.

## FIFTH AFFIRMATIVE DEFENSE

Albion, by reason of its own conduct and actions, has waived any right to assert the claims set forth in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE

Albion's claims are barred by the equitable doctrines of waiver, estoppel, and laches.

## SEVENTH AFFIRMATIVE DEFENSE

Any damage allegedly suffered by Albion was caused as a result of its own acts and omissions.

**EIGHTH AFFIRMATIVE DEFENSE**

Albion failed to take reasonable steps to mitigate its purported damages.

**NINTH AFFIRMATIVE DEFENSE**

Albion committed negligent, reckless and/or intentional acts and/or omissions that contributed to the damages alleged in the Complaint.

**TENTH AFFIRMATIVE DEFENSE**

Albion's claims are barred in whole or in part by the applicable statutes of limitations.

**COUNTERCLAIMS AND THIRD-PARTY CLAIMS OF JAMES TURRELL**

James Turrell, by his attorneys Manatt, Phelps & Phillips, LLP and John Silberman Associates PC, for his counterclaims against Michael Hue-Williams Ltd. d/b/a Albion Gallery ("Albion") and his third-party claims against Michael Hue-Williams ("Hue-Williams") (collectively the "Hue-Williams Parties"), alleges as follows:

**NATURE OF THE ACTION**

1.    These counterclaims and third-party claims arise from the Hue-Williams Parties' brazen disregard of fiduciary obligations to the renowned visual artist James Turrell.

2.    In an unlawful attempt to enrich themselves at Turrell's expense, the Hue-Williams Parties jeopardized Turrell's good name with art collectors, curators and the art community by, among other things, purporting to sell Turrell's work without his consent, displaying Turrell's unfinished work to potential buyers and others in direct contravention of his instructions and commingling his funds with the Hue-Williams Parties' own accounts.  The Hue-Williams Parties now have compounded this injury by filing a frivolous complaint against Turrell in an effort to mask their own wrongdoing.

3.  As a result of the Hue-Williams Parties' multiple breaches of fiduciary duties to Turrell, Turrell seeks disgorgement of commissions taken by the Hue-Williams Parties in excess of $769,600, an accounting of all sales purportedly made by the Hue-Williams Parties on Turrell's behalf for the last six years and punitive damages for the Hue-Williams Parties' intentional, wrongful conduct.

## THE PARTIES

4.  James Turrell is an internationally acclaimed artist who, over the course of three decades, has created works of art that involve the perception and effect of light within a created space.

5.  Hue-Williams is an art dealer who, upon information and belief, is the sole owner, director and officer of Albion. Upon information and belief, the Hue-Williams Parties transact business in New York.

## FACTUAL BACKGROUND

6.  Beginning in the early 1990s, Hue-Williams agreed to serve as an art dealer for Turrell and, in that capacity, as his agent. Specifically, Turrell authorized Hue-Williams to sell certain specified works on his behalf at certain specified prices and to collect payment on Turrell's behalf. In return for his efforts, Turrell and Hue-Williams agreed that Hue-Williams (or his designated entity) would receive a sales commission, generally in the amount of fifty percent (50%) of the retail price of the work, exclusive of production costs. As Turrell's art dealer, Turrell reposited special trust and confidence in Hue-Williams.

7.  The relationship was extremely lucrative for Hue-Williams. During the course of the relationship, Hue-Williams sold a number of works on Turrell's behalf – in almost all cases, works that buyers specifically commissioned Turrell to create. With respect to these sales,

Turrell and Hue-Williams would agree beforehand on the "retail" price of the work, the payment that Turrell would receive from sale, and the timing of such payment. In this last regard, Turrell routinely required full payment before installation of the work.

8.     On occasion, Turrell also provided finished pieces to Hue-Williams on consignment or for purchase and subsequent re-sale by Hue-Williams. For example, in or about 2004, Turrell agreed to sell Hue-Williams eight works from Turrell's "Projection" series (the retail price of each of which was $250,000), for $1,000,000 ($125,000 monthly for eight months).

9.     Notably, with respect to the Projection series, Hue-Williams failed to follow through on his commitment. Hue-Williams missed payment in the last two months depriving Turrell of $250,000 owed under the agreement. Hue-Williams did not pay Turrell this amount for many months, despite having sold the works and collecting payment from the buyers months earlier.

**The Tall Glass Series**

10.     From 2004 through early 2005, Turrell developed a series of works entitled the "Tall Glass" series. The Tall Glass series use a computer program designed by Turrell to generate a light field that creates a tangible and physical plane of light. Several art galleries, other than Albion, that also are dealers for Turrell contributed to the cost of developing the Tall Glass series.

11.     After Turrell developed a prototype for the Tall Glass series, Hue-Williams saw the work displayed at the Basel Art Fair in Switzerland and asked Turrell to develop a series for Hue-Williams to sell through Albion. Turrell was hesitant to embark on a new project with Hue-Williams because of Hue-Williams's failure to timely pay Turrell for the Projection series.

(Subsequently, Hue-Williams also failed to pay Turrell in a timely manner for a work entitled "Boullée's Eye," for which Hue-Williams had collected payment from a buyer in or about spring 2005, but did not pay Turrell his share until October 2005.)

12.     Still, with these concerns in mind, Turrell determined to provide Hue-Williams the opportunity to sell an edition of the Tall Glass series if he and Hue-Williams could reach a written agreement regarding their sale.  That, however, never occurred.

13.     In or about May 2005, Hue-Williams sent Turrell a draft agreement regarding the Tall Glass series.  Turrell did not accept this proposal, insisted on a more formal agreement and, additionally, demanded that Hue-Williams complete his obligations to Turrell under the Projection series agreement before embarking on the Tall Glass project.

14.     From May 2005 through March 2006, Turrell and Hue-Williams negotiated the terms of an agreement regarding the Tall Glass series.  But they never reached an agreement. The terms on which they never reached agreement included:  the number of works Turrell would provide to Hue-Williams, the price for the works, the timing of payments to be made to Turrell, the timing of delivery, and the law that would govern their agreement.

15.     Further, Turrell consistently insisted that Hue-Williams guarantee him full payment before delivering any of the works to the ultimate collectors; Hue-Williams never agreed.  He also insisted that the works be sold at a particular price, in part so that all of the galleries selling Tall Glass works would be selling them for approximately the same price, and no one gallery would have an unfair advantage over the others.  Again, Hue-Williams never agreed.

16.      Hue-Williams was well aware that he and Turrell had no agreement.  In September 2005, Hue-Williams wrote to Turrell "to nullify the offer [Hue-Williams] made" in

May 2005 and to present a new offer. Months later, he nullified the September 2005 offer as well. In December 2005, Hue-Williams wrote to Turrell to inform him that he "would like to redraft the terms of [his] offer letter" of September 2005 and, at that time, Hue-Williams presented yet another offer.

17.     Turrell never accepted Hue-Williams's offers and never signed any of the draft agreements Hue-Williams presented. Instead, Turrell consistently insisted that Hue-Williams modify the proposed writings to include key terms Turrell demanded.

### Hue-Williams Displays A Tall Glass Prototype Without Authority

18.     During 2005, Turrell began to develop a new prototype for the Tall Glass works. Turrell planned to use an LED color control panel, rather than a neon one that he had used in the Tall Glass works previously developed with the galleries other than Albion.

19.     Because the prototype was incomplete, Turrell instructed Hue-Williams not to show it to anyone.

20.     Hue-Williams ignored Turrell's instruction. On information and belief, on several occasions Hue-Williams displayed the prototype to potential buyers and museum curators.

### Hue-Williams Purports to Sell Tall Glass Works Without Authority

21.     Hue-Williams also falsely represented to buyers that he had the authority to sell Tall Glass works. Hue-Williams *never* received consent from Turrell to sell the Tall Glass works (with a single exception). In fact, Hue-Williams entered into at least eight unauthorized sales of Turrell's Tall Glass works – five of which, remarkably, he entered into before December 2005 – the very same time that he withdrew his contract offers to Turrell. Further, Hue-Williams, on information and belief, is improperly holding at least $519,600 in phony "commissions" collected in connection with such unauthorized sales.

22.     In March 2006, in complete frustration over Hue-Williams' conduct, Turrell wrote to Hue-Williams to inform him that Turrell had "decided to discontinue the Tall Glass series with [him]." For the balance of 2006, Hue-Williams tried to revive the deal, but Turrell would not agree because Hue-Williams still would not agree to Turrell's terms.

23.     Turrell did permit and agree to one sale, to Louise MacBain, because the work was sold at the price Turrell requested and because Turrell received timely payment of his share. Ms. MacBain paid $580,000 for the piece, which included the $500,000 price for the work, which Turrell and the Hue-Williams Parties divided equally, plus $80,000 for fabrication costs.

**Hue-Williams Admits His Wrongful Conduct**

24.     Hue-Williams has admitted his wrongful conduct. In late 2006, Hue-Williams wrote an apology letter to Turrell. In the letter, Hue-Williams admitted that he had "jumped the gun" and "acted too swiftly" in showing the Tall Glass prototype before it was completed and that, after seeing a properly completed work, he "now understand[s] why [Turrell] was so upset" with him. Hue-Williams acknowledged that, as a result of his own conduct, Turrell's "trust placed in [Hue-Williams] has been so damaged of late" and "the Tall Glass project has been a problem." Hue-Williams sought Turrell's forgiveness, saying that he was "sorry" for the "problems" he had created and the "rift" that he had caused.

25.     Upon information and belief, the Hue-Williams Parties breached their trust with Turrell – by using Turrell's name without his permission and engaging in unauthorized sales of Tall Glass works – for their own financial benefit and under significant financial pressure. In this latter regard, in or about 2003 or 2004, Hue-Williams opened the Albion Gallery in London. Upon information and belief, the Hue-Williams Parties borrowed millions of pounds to open the

Gallery and, in the following years, faced notable financial pressures of operating the new venture.

26. In or about early 2007, Turrell formally ended his agency relationship with the Hue-Williams Parties.

27. Thereafter, the Hue-Williams Parties filed this lawsuit.

## COUNT ONE
### (Breach of Fiduciary Duty)

28. Turrell repeats and reallages each allegation contained in paragraphs 1 through 27 as if fully stated herein.

29. The Hue-Williams Parties owed fiduciary obligations to Turrell as Turrell's art dealer and agent. In this capacity, Turrell placed special trust and confidence in Hue-Williams.

30. The Hue-Williams Parties wrongfully and intentionally breached their fiduciary obligations to Turrell by, among other things:

    a. promising works of art by Turrell to buyers and collecting payments from them without Turrell's authority;

    b. displaying an unfinished prototype of the Tall Glass series in direct contravention of Turrell's instructions;

    c. collecting money on Turrell's behalf but failing to timely provide that money to Turrell or to pay any interest that accumulated thereon; and,

    d. commingling funds held in trust for Turrell with the Hue-Williams Parties' own accounts and, on information and belief, using those funds to pay debts owed by the Hue-Williams Parties.

31. By reason of the Hue-Williams Parties' breaches of their fiduciary obligations, Turrell has been damaged in an amount to be determined at trial. Additionally, Turrell is entitled

to disgorgement of fees and/or commissions collected by the Hue-Williams Parties in connection with the sale of works in the Tall Glass series – which, upon information and belief, amount to a sum greater than $769,600, plus interest, along with punitive and exemplary damages in a sum to be determined at trial and attorneys' fees and costs.

## COUNT TWO
### (Accounting)

32.     Turrell repeats and realleges each allegation contained in paragraphs 1 through 28 as if fully stated herein.

33.     Because of the Hue-Williams Parties' improper exploitation of their agency relationship with Turrell, Turrell is entitled to an accounting of all sales purportedly made on his behalf by the Hue-Williams Parties for the last six years.

34.     Turrell has suffered, is suffering and will continue to suffer irreparable harm absent the grant of relief sought herein.

32.  Turrell has no adequate remedy at law.

WHEREFORE, Turrell demands judgment in his favor against Albion as follows:

(a)     dismissing the Complaint with prejudice;

(b)     awarding Turrell attorneys' fees, costs, and disbursements for this action;

(c)     for such other and further relief as to this Court seems just and proper,

and against the Hue-Williams parties:

(d)     for the first cause of action, an award of damages of no less than $769,600, along with punitive and exemplary damages in a sum to be determined at trial and attorneys' fees and costs;

(e)     for the second cause of action, directing the Hue-Williams Parties to prepare an accounting of all sales purportedly made on Turrell's behalf for the last six years; and

(f)    awarding Turrell interest and costs, and such other relief as the Court deems just, proper and equitable.

Dated: New York, New York
       September 19, 2007

>                       By:   /s/ Gregory A. Clarick
>                             Gregory A. Clarick
>                             Lisa G. Horwitz
>                             MANATT, PHELPS & PHILLIPS, LLP
>                             7 Times Square
>                             New York, New York 10036
>                             Telephone: (212) 790-4500
>
>                             Donn Zaretsky
>                             JOHN SILBERMAN ASSOCIATES PC
>                             145 East 57th Street
>                             New York, New York 10022
>                             Telephone: (212) 319-3737
>
>                             *Attorneys for Defendant and
>                             Counterclaim/Third-Party Plaintiff James
>                             Turrell*

80402963.2